IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-300-D

| | |
|---|---|
| MATTHEW LEE YENSAN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | **ORDER** |

On April 19, 2024, Matthew Lee Yensan ("Yensan" or "petitioner") filed a pro se petition under 19 U.S.C. § 1607(a)(1), Fed. R. Crim. P. 41(g), the Fourth Amendment of the United States Constitution, and the Due Process Clause of the Fifth Amendment of the United States Constitution for the return of 282.845077 Bitcoin Yensan forfeited to the United States [D.E. 1]. On December 16, 2024, the United States moved to dismiss Yensan's petition for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted [D.E. 16] and filed a memorandum in support [D.E. 17]. See Fed. R. Civ. P. 12(b)(1), (b)(6). On March 3, 2025, Yensan responded in opposition [D.E. 22]. On March 5, 2025, the United States replied [D.E. 23]. As explained below, the court grant the United States' motion to dismiss and dismisses without prejudice Yensan's petition.

I.

In July 2017, the United States Drug Enforcement Administration ("DEA") in Raleigh, North Carolina, received information that Yensan was mass producing counterfeit Xanax pills and selling them on the dark web. See United States v. Yensan, 5:17-CR-303 Presentence Investigation

Report ("PSR") [D.E. 44] ¶ 11.[1] DEA agents began investigating Yensan and soon identified Yensan's residence and Raleigh-area storage unit as places of interest. See id. On August 22, 2017, a deputy with the Wake County Sheriff's Office stopped a vehicle leaving Yensan's neighborhood. See id. at ¶ 12. During the stop, police searched the vehicle and recovered 20 bindles of heroin and a gram of marijuana. See id. Police arrested and questioned the vehicle's occupants who stated that they purchased the drugs from Yensan and his girlfriend. See id.

On September 9, 2017, authorities intercepted a package bound for Yensan's residence and addressed to "Y Vending, Limited Liability Corporation." Id. at ¶ 13. Upon searching the package, authorities discovered that it contained 1,716 grams of marijuana. See id. On September 12, 2017, authorities attempted to deliver the package to Yensan at his residence, but Yensan refused to accept it. See id. Shortly thereafter, authorities apprehended Yensan as he attempted to flee his residence. See id. DEA agents then executed a search warrant at Yensan's residence. See id.

During the search of Yensan's residence, agents recovered: (1) a loaded .357 revolver; (2) a digital scale and 53.5 grams of marijuana; (3) a digital money counter and bank money bands; (4) another loaded .357 revolver with a speed reloader and holster; (5) $269,068 in United States currency, multiple Bitcoin wallets, and various documents including a recovery key to reconstitute a virtual wallet; (6) a loaded .22 caliber rifle; (7) 357 grams of butane hash oil; (8) 480 grams of marijuana, unidentified prescription medications, 153.3 grams of butane hash oil, and a loaded .40 caliber handgun; (9) a variety of edible and liquid forms of marijuana (438 grams of marijuana), marijuana in a vacuum sealed bag, jar, and bag (660 grams of marijuana), and 85.7 grams of butane hash oil; (10) vacuum sealed bags containing 2,005 grams of marijuana; and (11) a loaded .40

---

[1] This order refers to the filings in Yensan's related criminal case as "Yensan, 5:17-CR-303 [D.E.]" and filings in this case as "[D.E.]."

caliber handgun. See id. That same day, agents also executed a search warrant at Yensan's storage unit where they discovered a veritable pill factory. See id. at ¶ 14. Agents recovered, inter alia, "approximately 80,000 dosage units of Xanax; the ingredients needed to manufacture approximately 300,000 dosage units of Xanax to include two to three pounds of Alprazolam and an amount of sucrose; three pill presses; a pill counter; mylar bags; a label maker and labels; addresses for customers; a computer, the browser of which was open to the [dark web]; buckets; funnels; pill dyes; strainers; packaging materials; a digital scale; heat sealers; a box containing postage; a power converter; an air compressor; a light tower; carts; a vacuum sealer; and mixers." Id. Yensan had rented the storage unit under an alias. See id. at ¶ 15.

During the search of Yensan's residence, agents discovered a notecard with 24 seemingly random words written on it hidden in a safe. See id. at ¶ 16. On September 25, 2017, agents input those seemingly random words into a Trezor device. See id. at ¶ 16. A Trezor device is a cryptographic device that allows a person to perform secure Bitcoin transactions and store Bitcoin in digital wallets. See PSR ¶ 3 n.3. The words turned out to be passwords that allowed agents to reconstitute one of Yensan's virtual wallets. See id. In that virtual wallet ("wallet one"), agents found 182.7473678 Bitcoin, most of which having passed through Alphabay, the dark web marketplace Yensan used to sell his counterfeited Xanax. See id. Agents later discovered an additional 1,000 Litecoin, another cryptocurrency, in wallet one. See id. Agents found another three digital wallets: the first containing 5 Bitcoin ("wallet two"), the second containing 50 Bitcoin ("wallet three"), and the third containing 50.0998 Bitcoin ("wallet four"). See id. In total, agents seized 287.8471678 Bitcoin from Yensan's various virtual wallets. See id. The DEA processed the seized assets for administrative forfeiture. See [D.E. 17] 2.

On October 3, 2017, a grand jury in the Eastern District of North Carolina indicted Yensan for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute alprazolam in violation of 21 U.S.C. § 841(a)(1), distribution of a controlled substance by means of the internet in violation of 21 U.S.C. § 841(h), and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). See Yensan, 5:17-CR-303 [D.E. 17, 18].

Throughout October and November 2017, the DEA sent direct notice of the administrative forfeiture proceedings to Yensan at five different mailing addresses (including the county jail where authorities were holding Yensan). See [D.E. 17] 2; [D.E. 17-1] ¶¶ 4(b)-(e), 6(b)-(f), 7(b)-(f); [D.E. 17-2]; see also [D.E. 17-1] 12–29, 34–44, 47–56. Additionally, from November 20, 2017, through December 19, 2017, the DEA published notice of the administrative forfeiture proceedings for 30 consecutive days on Forfeiture.gov, the United States' official forfeiture website. See [D.E. 17] 3; [D.E. 17-1] ¶¶ 4(f), 6(g), 7(g). The DEA did not receive any claims to the seized property during this time. On January 23, 2018, the United States filed notice of administrative forfeiture as to the 182.7473678 Bitcoin from wallet one. See [D.E. 17] 3; [D.E. 17-1] ¶ 4(g); see also [D.E. 17-1] 30. On January 31, 2018, the United States filed notice of administrative forfeiture as to the 50.0998 Bitcoin from wallet three and the 50 Bitcoin from wallet four. See [D.E. 17] 3; [D.E. 17-1] ¶¶ 4(g), 6(h), 7(h); see also [D.E. 17-1] 33.

On January 23, 2018, the United States Attorney for the Eastern District of North Carolina filed a criminal information against Yensan in the United States District Court for the Eastern District of North Carolina. See Yensan, 5:17-CR-303 [D.E. 31]. That same day, Yensan signed a plea agreement, which the court accepted. See Yensan, 5:17-CR-303 [D.E. 34]. In that plea agreement, Yensan agreed to

assist the United States in the recovery and forfeiture of any assets which facilitated and/or were acquired through unlawful activities, including all such assets in which [Yensan] has any interest or control. Specifically, [Yensan] agrees to voluntarily forfeit and relinquish to the United States the property specified in the Criminal Information. [Yensan] further agrees to sign any documents necessary to effectuate the forfeiture and waives any further notice. In addition, [Yensan] forfeits and otherwise waives any ownership right in all items seized during the investigation of the acts alleged in the Criminal Information. The court has jurisdiction over the disposition of such items and may order the investigative agency to dispose of the items in such manner as provided by the agency's regulations . . . . [Yensan] further agrees that the Preliminary Order of Forfeiture shall be final as to [Yensan], as allowed by [Federal Rule of Criminal Procedure 32.2(b)(4)(A)].

Id. ¶ 2.e.

On May 25, 2018, Yensan voluntarily forfeited the 1000 Litecoin, 1.43974105 Bitcoin, and 0.83581392 Bitcoin to the United States. See Yensan, 5:17-CR-303 [D.E. 51]. In that voluntary forfeiture, Yensan stipulated that the forfeited property was involved in the crimes in Yensan's criminal case. See id. On June 1, 2018, the court granted the United States' motion for preliminary forfeiture and ordered Yensan to forfeit to the United States, inter alia, the 1000 Litecoin, 1.43974105 Bitcoin, and 0.83581392 Bitcoin. See Yensan, 5:17-CR-303 [D.E. 54]. On January 17, 2019, the court signed a final order of forfeiture and ordered that Yensan permanently forfeit to the 1000 Litecoin, 1.43974105 Bitcoin, and 0.83581392 Bitcoin to the United States. See Yensan, 5:17-CR-303 [D.E. 62].

By January 17, 2019, the United States had seized all of the 282.845077 Bitcoin at issue in this case either by judicial or administrative forfeiture. Five years later, Yensan filed his petition. See [D.E. 1]. Yensan challenges the forfeiture of 282.845077 Bitcoin of the total 287.8471678 Bitcoin authorities seized from Yensan's various virtual wallets and does not challenge the forfeiture of the 1000 Litecoin, 1.43974105 Bitcoin, and 0.83581392 Bitcoin forfeited by the court's order of January 17, 2019. See id.

II.

The United States moves to dismiss Yensan's petition for lack of subject-matter jurisdiction. See [D.E. 16]. A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Fed. R. Civ. P. 12(b)(1). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must establish that this court has subject-matter jurisdiction over his claims. See, e.g., Steel Co., 523 U.S. at 104; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject[-]matter jurisdiction, the . . . court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

A defendant can mount either a facial or a factual attack on a court's subject-matter jurisdiction. See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 620–21 (4th Cir. 2018); Kerns, 585 F.3d at 192; Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A factual attack asserts that the "jurisdictional allegations of the complaint [are] not true." Adams, 697 F.2d at 1219 (emphasis added). When a party raises a factual attack, "the trial court necessarily assumes

6

a different role than in a proceeding to resolve a 12(b)(1) motion based on contentions that the complaint was jurisdictionally deficient on its face." Id. Under such circumstances, the court "may go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." Id. "[I]n some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on [his] own." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); see Kerns, 585 F.3d at 192.

In its motion to dismiss, the United States mounts a factual attack on the court's subject-matter jurisdiction and argues that Yensan lacks Article III standing because the plea agreement he signed forfeited his interest in the 282.845077 Bitcoin at issue. See [D.E. 17] 4–6. In a civil forfeiture case, a claimant must show "a colorable interest in the property [at issue] to have standing." United States v. Phillips, 883 F.3d 399, 402 (4th Cir. 2018). Merely asserting "an ownership interest in the property" does not suffice. Id. at 403; see United States v. $17,900.00 in U.S. Currency, 859 F.3d 1085, 1089–90 (4th Cir. 2017). A claimant must prove both statutory standing and Article in standing by a preponderance of the evidence. See $17,900.00 in U.S. Currency, 859 F.3d at 1089.

A plaintiff establishes Article III standing by showing: (1) that the plaintiff has "suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from the court. Chambers Med. Techs. of S.C.,

7

Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (cleaned up); see Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024); Tyler v. Hennepin Cnty., 598 U.S. 631, 636 (2023); TransUnion LLC v. Ramirez, 594 U.S. 413, 423–30 (2021); Frank v. Gaos, 586 U.S. 485, 491 (2019); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); Laufer v. Naranda Hotels, LLC, 60 F.4th 156, 161 (4th Cir. 2023); Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 450 (4th Cir. 2017).

A mere statutory violation is not synonymous with Article III standing. See TransUnion, 594 U.S. at 423–30; Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 652–53 (4th Cir. 2019); see also Frank, 586 U.S. at 493; Spokeo, 578 U.S. at 339. Rather, a plaintiff alleging that a defendant violated his statutory rights must have "a personal stake in the case," which is "the traditional core of standing." Krakauer, 925 F.3d at 653; see Murthy v. Missouri, 603 U.S. 43, 56–58 (2024). Moreover, injury-in-fact requires the plaintiff to demonstrate a "concrete and particularized" harm. Krakauer, 925 F.3d at 653; see Spokeo, 578 U.S. at 340. As for concreteness, the injury must be "real, and not abstract," even if the harm is intangible. Spokeo, 578 U.S. at 340 (quotations omitted); see Curtis v. Propel Prop. Tax Funding, L.L.C., 915 F.3d 234, 240–41 (4th Cir. 2019). Furthermore, "in determining whether a given injury meets the constitutional threshold, [courts] look to both historic practice and the judgment of Congress." Krakauer, 925 F.3d at 653; see TransUnion, 594 U.S. at 424–26; Spokeo, 578 U.S. at 340–41; Lujan, 504 U.S. at 560; Garey v. James S. Farrin, P.C., 35 F.4th 917, 921–22 (4th Cir. 2022). Tangible or intangible injuries can satisfy the requirement of concreteness. See Spokeo, 578 U.S. at 340–41. Nonetheless, "sincere legal, moral, ideological, [or] policy objections" do not create standing. All. for Hippocratic Med., 602 U.S. at 396.

"An Article III court is not a legislative assembly, a town square, or a faculty lounge." Id. at 382. If a plaintiff does not have standing, the court does not have subject-matter jurisdiction to hear the plaintiff's claim. See, e.g., Lujan, 504 U.S. at 560–61; White Tail Park, 413 F.3d at 459; Davis v. Safe Streets USA LLC, 497 F. Supp. 3d 47, 51–55 (E.D.N.C. 2020); Chapman v. CKE Rests. Holdings, Inc., No. 5:19-CV-189, 2020 WL 1230130, at *3–6 (E.D.N.C. Mar. 12, 2020) (unpublished); Payne v. Sears, Roebuck & Co., No. 5:11-CV-614, 2012 WL 1965389, at *2–3 (E.D.N.C. May 31, 2012) (unpublished).

Yensan signed a plea agreement in which he agreed "to voluntarily forfeit and relinquish to the United States the property specified in the Criminal Information." Yensan, 5:17-CR-303 [D.E. 34] ¶ 2.e. The criminal information specified, inter alia, the two Bitcoin cold storage devices and the 182.7462777 Bitcoin from wallet one recovered by authorities via the Trezor device. See Yensan, 5:17-CR-303 [D.E. 31]. Moreover, Yensan agreed to forfeit and waive "any ownership right in all items seized during the investigation of the acts alleged in the Criminal Information," which would include the Bitcoin seized from wallets two, three, and four during the investigation of Yensan's drug counterfeiting operation and Yensan's subsequent arrest. Yensan, 5:17-CR-303 [D.E. 34] ¶ 2.e. Furthermore, on January 17, 2019, the court signed a final order of forfeiture and ordered that Yensan permanently forfeit the 1000 Litecoin, 1.43974105 Bitcoin, and 0.83581392 Bitcoin to the United States. See Yensan, 5:17-CR-303 [D.E. 62].

Yensan lacks Article III standing because, in his plea agreement, he forfeited his interest in the property at issue and agreed not to contest a civil forfeiture of that property. See United States v. Twenty Miljam-350 IED Jammers, 669 F.3d 78, 91 (2d Cir. 2011); United States v. Garza, No. 3:16-CR-97, 2022 WL 2348684, at *2 (W.D.N.C. June 29, 2022) (unpublished); United States v. Misc. Personal Property, No. 5:16-CV-229, 2019 WL 3408809, at *6 (E.D.N.C. July 26, 2019)

(unpublished); United States v. Land, No. 2:13-CV-15-D, 2013 WL 12110197, at *1 (E.D.N.C. Nov. 5, 2013) (unpublished); United States v. Real Prop. Described in Deeds, 962 F. Supp. 734, 737 (W.D.N.C. 1997) (collecting cases). Yensan admits that he signed the plea agreement. No issue of fact exists concerning jurisdiction, and the court may resolve the United States' motion under Rule 12(b)(1) without an evidentiary hearing. See Arbaugh, 546 U.S. at 514; Kerns, 585 F.3d at 192. Accordingly, the court grants the United States' motion to dismiss Yensan's petition for lack of subject-matter jurisdiction.

Alternatively, even if the plea agreement covered only the 182.7462777 Bitcoin from wallet one identified in the criminal information, Yensan failed to timely assert a claim to the 100.0998 Bitcoin from wallets three and four that the United States administratively seized. See [D.E. 17] 3; [D.E. 17-1] ¶ 4(g), 6(h), 7(h); see also [D.E. 17-1] 30, 33. A putative claimant must move to set aside a declaration of forfeiture "not later than 5 years after the date of final publication of notice of seizure of the property." 18 U.S.C. § 983(e)(3). Here, final publication of the notice of seizure occurred on December 19, 2017. See [D.E. 17-1] 31, 55. Yensan failed to respond to the United States' repeated notices. If Yensan wished to set aside the administrative forfeitures of the 100.0998 Bitcoin from wallets three and four, Yensan's motion was due not later than December 19, 2022. Yensan, however, did not file his petition until April 19, 2024. See [D.E. 1]. Thus, Yensan forfeited his interest in the 100.0998 Bitcoin from wallets three and four when he failed to timely file a motion to set aside the forfeiture declaration.

In opposition, Yensan argues that the United States breached the plea agreement. See [D.E. 22] 3–4. The plea agreement, however, did not obligate the United States to seek forfeiture by any particular means or restrict the United States' ability to seek administrative forfeiture of some

assets and judicial forfeiture of others. Accordingly, the United States did not breach the plea agreement.

Yensan also argues that his challenge to the administrative forfeitures is timely because he seeks relief under 28 U.S.C. § 2401(a), which contains a six-year statute of limitation, rather than 18 U.S.C. § 983's five-year limitation. See [D.E. 22] 5–6. The court rejects this argument. Even if Yensan's petition falls under 28 U.S.C. § 2401(a), Yensan's petition is still untimely. Section 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). "The accrual date is the date on which [Yensan] was on reasonable inquiry notice of the forfeiture, i.e., the earlier of the following: when he first became aware that the government had declared the currency forfeited, or when an inquiry that he could reasonably have been expected to make would have made him aware of the forfeiture." United States v. Minor, 228 F.3d 352, 359 (4th Cir. 2000). When a person receives actual notice of the government's intent to proceed with administrative forfeiture, the claim accrues on the date forfeiture occurred. See id. at 359–60.

The United States provided Yensan both direct and public notice of its intent to proceed with administrative forfeiture proceedings. Yensan does not allege that he failed to receive notice of the administrative forfeiture proceedings, and the DEA issued its last declaration of forfeiture on January 31, 2018. See [D.E. 17] 3; [D.E. 17-1] ¶¶ 4(g), 6(h), 7(h); see also [D.E. 17-1] 33. Under 28 U.S.C. § 2401(a), Yensan's claim accrued on January 31, 2018, and Yensan had to file his petition not later than six years later, which was January 31, 2024. Yensan, however, did not file his petition until April 19, 2024. Thus, even if section 2401's six-year limitation applies, Yensan failed to timely raise his challenge to the administrative forfeiture proceedings.

11

III.

Alternatively, the United States moves to dismiss Yensan's petition for failure to state a claim. See [D.E. 16]. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus.,

12

Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The United States argues Yensan fails to state a claim because section 983(e) only permits a district court to resolves issues concerning notice, not challenges to the underlying administrative forfeiture proceedings, and that Yensan's petition does not allege insufficient notice. See [D.E. 17] 6–7. In opposition, Yensan asserts that "[h]e did not agree for his assets to be forfeited illegally by the government." [D.E. 22] 6 (emphasis omitted).

The Civil Asset Forfeiture Reform Act governs "[m]ost civil forfeiture actions in the federal courts." United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 312 (4th Cir. 2018); see 18 U.S.C. § 983. Section 983 provides in relevant part:

> (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—
>
> > (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
> >
> > (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

13
Case 5:24-cv-00300-D-RN   Document 24   Filed 05/14/25   Page 13 of 14

18 U.S.C. § 983(e)(1)(A). Section 983 does not permit a district court to resolve challenges to administrative forfeiture proceedings. See Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005); Scarabin v. Drug Enforcement Admin., 919 F.2d 337, 338 (5th Cir. 1990); Garza, 2022 WL 2348684, at *2; United States v. 2005 Mercedes Vehicle, No. 5:09-MJ-23, 2011 WL 3471083, at *2 (N.D. W. Va. Aug. 8, 2011) (unpublished); McKinney v. U.S. Dep't of Justice, 580 F. Supp. 2d 1, 3–4 (D.D.C. 2008); cf. United States v. Wilson, 699 F.3d 789, 794–96 (4th Cir. 2012). Thus, Yensan fails to state a claim under section 983(e).

Finally, Yensan purports to assert a claim under 19 U.S.C. § 1607(a)(1). See [D.E. 1]. Section 1607(a)(1) does not create a private right of action. See 19 U.S.C. § 1607(a)(1). Accordingly, the court grants the United States' motion to dismiss Yensan's petition for failure to state a claim.

IV.

In sum, the court GRANTS the respondent's motion to dismiss [D.E. 17] and DISMISSES WITHOUT PREJUDICE petitioner's petition [D.E. 1]. The clerk SHALL close the case.

SO ORDERED. This 14 day of May, 2025.

JAMES C. DEVER III
United States District Judge